IN THE UNITED STATES FEDERAL COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| **KRYSTAL DIANE REYNOLDS,** | ) |
| | ) Case No. 4:23-cv-68 |
| *Plaintiff,* | ) |
| | ) |
| *v.* | ) |
| | ) |
| **M. M. SINGH,** | ) **AMENDED COMPLAINT** |
| individually and in his official capacity | ) |
| as Officer of Raleigh Police Department, | ) |
| | ) **JURY DEMAND** |
| **RICHARD A. GERGANOUS,** | ) |
| individually and in his official capacity | ) |
| as Officer of Raleigh Police Department, | ) |
| | ) |
| **CITY OF RALEIGH,** | ) |
| | ) |
| *Defendants.* | |

The Plaintiff, by and through undersigned counsel, complains of the Defendants as follows:

## JURISDICTION AND VENUE

1. Plaintiff brings this action under 42 U.S.C. § 1983, the Fourth and Fourteenth Amendments to the United States Constitution.

2. This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

3. Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in the Eastern District of North Carolina, the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

4. This Court has supplemental jurisdiction over plaintiff's causes of action arising under the North Carolina state law pursuant to 28 U.S.C. § 1367.

1

5. This Court is authorized to grant the Plaintiffs' prayer for relief regarding costs, including reasonable attorney's fees, under 42 U.S.C. § 1988.

## JURY DEMAND

6. Pursuant to the Seventh Amendment of the United States Constitution, the Plaintiffs hereby request a jury trial on all issues and claims set forth in this Complaint.

## FACTS

7. The Raleigh Police Department is the primary law enforcement agency for the areas of Wake County, North Carolina located within the city limits of Raleigh, North Carolina.

8. At all relevant times, Police Officer Richard A. Gerganous and Police Officer M. M. Singh were sworn officers with the Raleigh Police Department.

9. On or about February 15, 2022, Officers Gerganous and Singh responded to Plaintiff's house located at 2221 109 Valley Edge Drive, Raleigh, NC 27614, following a tip that two persons suspected of felony drug possession entered plaintiff's residence.

10. The Defendants' Officers Gerganous and Singhs body-worn cameras were running during the encounter. The majority of the dialogue between the officers and the Plaintiff is captured by the body-worn cameras.

11. Plaintiff's Ring doorbell camera was running during the encounter and was able to capture a significant portion of the encounter and dialogue between the Plaintiff and the Raleigh Police Officers that occurred on the Plaintiff's front porch.

12. On or about February 15, 2022 at approximately 9:11pm, Officer Singh from the Raleigh Police Department, encountered the Plaintiff in the street in front of her house. Officer Singh questioned the plaintiff in the street, asking her what she was doing and whether two people entered her home.

13. The Plaintiff told the police officers that she was replacing her Ring camera battery for the Ring camera on her front porch, that no one entered her home, and stated that she was the only one who resided in the residence with her pets.

14. Later, on or about February 15, 2022, at approximately 9:28pm, two armed Raleigh Police Officers, including Officer Singh, approached the Plaintiff's home and knocked on her door.

15. The Plaintiff answered her door. The armed police officers, primarily Officer Singh, then began questioning the plaintiff, asking her "Who were the two guys that came in here? We know two guys came in here."

16. The Plaintiff answered the officers and told them that no one had entered her home.

17. The police officers then asked to enter the home and the Plaintiff responded, asking, "Am I supposed to do that?" Officer Singh then responds, telling her "It's up to you, I'm not saying you do, I'm not saying you don't?"

18. The Plaintiff then told the officers that they could look around outside but that she was not comfortable with them entering her home.

19. Officer Singh then repeatedly demanded that the Plaintiff "step outside her house."

20. The Plaintiff refused to step outside of her house.

21. Then, without a warrant or the presence of exigent circumstances, the armed Officer Singh then reached into the house, breaking the threshold, and forcibly grabbed the Plaintiff by her arm.

22. The Plaintiff repeatedly told the officer not to touch her or grab her and asked the officer to let her go.

23. Officer Singh, refused to let the Plaintiff go and, while grasping and pulling on her arm, continually demanded that she step outside of the house.

24. Officer Singh then stated that they were "getting a search warrant" and that no one was allowed in the house; however, no search warrant was ever obtained.

25. The Plaintiff continued to ask the officer to let her go, the officer refused and told the Plaintiff, "step outside, I don't want you in the house at this point," and overpowers the Plaintiff, forcibly pulling the Plaintiff out of her house.

26. During a motion to suppress, in Wake County, North Carolina, in case 22CR202704, The Honorable Judge Hauter found that Officer Singh lacked sufficient grounds to enter the home of Mrs. Reynolds, and dismissed associated resist, delay, and obstruct charges.

27. Once the Plaintiff is then outside of her house on her front porch, the officers continues demanding that the Plaintiff allow the officers to search the house.

28. The Plaintiff is told to sit on a box on the front porch while three armed officers, including Officer Singh, tower over her, accusing her of having the two individuals in her house and demanding to search the house.

29. The Plaintiff informs the officers that she has PTSD from a prior incident and indicates that she is uncomfortable with allowing the officers into her home.

30. Officer Singh, still accusing Plaintiff of having two individuals in her home and demanding to search her home, never allows Mr. Reynolds to disengage from the officers or return into her home.

31. At no point during this process, despite being seized by the Officers, is Mrs. Reynolds read her Miranda Rights.

32. Despite already having been forcefully removed from the home, refusing to allow the officers in areas of the home, Defendants continue to bombard Mrs. Reynolds until she acquiesces and allows them entry.

4

33. During the course of the search, the officers found two individuals in the house. After discovering the individuals, Officer Singh then told the Plaintiff that she was going over to his police car, either "in cuffs or out of cuffs." The Plaintiff refused, and an altercation between the parties erupted.

34. During the course of being handcuffed, the Plaintiff responded by attempting to prevent the officers from handcuffing her. The Plaintiff resisted the illegal contact from the officers, telling them to leave her alone, to not touch her, and repeatedly asking them why she was being arrested.

35. The officers responded, stating that the Plaintiff was solely being arrested for assaulting an officer and delaying an investigation by not voluntarily interacting with the officers.

36. The Plaintiff stated that she only fought the officers because they had no right to arrest her and were assaulting her. The Plaintiff repeatedly informed the officers that they were hurting her, pressing the handcuffs into her wrists, and that the handcuffs were cutting into her wrists. The Plaintiff additionally informed the officers that they were injuring her by kneeling on and pressing into her knee and pulling on her neck.

37. Following the arrest, the Plaintiff developed several severe bruises on her left arm and wrists. The Plaintiff received several cuts to her wrist and a black eye as well. The Plaintiff sought treatment from Wake Med emergency care for the injuries incurred from her arrest. Subsequently, the Plaintiff also developed issues with her mental health following the incident and sought treatment for those issues from her primary medical care, presenting with post-traumatic stress and mental health struggles from the altercation with the police.

38. During testimony associated with the charges against Mrs. Reynolds, Officer Singh testified that Mrs. Reynolds has no legal obligation to tell her if the men were in her home, to interact with the officers, nor allow the officers to search her home.

## CAUSES OF ACTION

**COUNT I:  Fourth Amendment to the U.S. Constitution, via 42 U.S.C. § 1983**

39. Plaintiff incorporates above paragraphs 1 through 38 by reference as if fully set forth herein.

40. The Officers of the Raleigh Police Department operate under the supervision and control of the City of Raleigh.  Officers Gerganous and Singh are police officers for the City of Raleigh.  The actions of Officer Gerganous and Singh while present at 2221 109 Valley Edge Drive, Raleigh, NC 27614 on February 15, 2022 and acting in their official capacity, are and were at all material times the actions of both the Raleigh Police Department and reflect the policies and procedures of these defendants.

41. Defendants know of and enforces the policies and practices described above.

42. Defendant Singh and Gerganous knew or should have known that the circumstances leading to the arrest of the Plaintiff and the discovery of the two individuals in her home were in violation of the Fourth Amendment, yet they proceeded to forcibly grab the Plaintiff, remove her from her home, search her home and arrest her.

43. Upon information and belief, Officer Singh has a history of being aggressive with victims, suspects, and others he comes into contact with while on duty.

44. The actions taken by the officer defendants were taken in bad faith, or, in the alternative, negligently, and were not the actions that a reasonable officer would have taken in a

similar situation, and the Plaintiff was damaged as a direct and proximate result of these actions in the following respects:

   a. Violation of her constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution to be free from unreasonable searches and seizures of her person and property, namely, her home;

   b. Loss of personal freedom when she was prevented from re-entering her home, subsequently handcuffed, placed in the squad car, and eventually charged;

   c. Intentional, offensive contact with her body by grabbing her and pulling her from the home, grabbing and pulling her arm outside the home, forcing her to the ground, kneeling on her, and improperly applying handcuffs;

   d. Fear of imminent peril resulting from her suffering injuries at the hands of the Defendants;

   e. Pain and suffering, both physical and emotional

   f. Costs associated with medical and mental health treatment; and

   g. Loss of reputation in the community of Raleigh and throughout City of Raleigh, North Carolina.

45. At all relevant times, Defendants Gerganous and Singh were acting under color of law and under color of authority as police officers, employees, and agents or servants of the City of Raleigh and as agents of the State of North Carolina.

46. The wrongful acts of the defendants complained of herein were undertaken maliciously, negligently, or unreasonably, and include, without limitation, the following:

   a. Intentionally assaulting and battering the Plaintiff for exercising her right not to allow officers in her home;

b. Intentionally causing the unlawful seizure of Plaintiff when Defendants knew or should have known there were no grounds, probable cause, warrant, or exigent circumstances creating lawful authority to enter the Plaintiff's home;

c. Intentionally engaging in the unlawful search of Plaintiff's home when Defendants knew or should have known there were no grounds, probable cause, warrant, or exigent circumstances creating lawful authority to enter Plaintiff's home;

a. Intentionally causing the arrest of the plaintiff when the defendants knew or should have known there were no grounds nor probable cause for arrest;

b. The failure of the defendants City of Raleigh and Raleigh Police Department to adequately train the officers of the Raleigh Police Department in investigative techniques and procedures;

c. Repeatedly berating the Plaintiff in order to obtain coerced authorization to enter and search the home;

d. Preparation of groundless reports and affidavits in order to obtain an arrest warrant against the plaintiff; and

e. The procurement of groundless charges against the plaintiff based upon incomplete, unsupported evidence which the defendants knew or should have known was false, distorted, or fabricated.

47. Plaintiff has been compelled to employ the undersigned attorney to represent her in this matter and is entitled to recover a reasonable attorneys' fee for services of her attorneys herein.

48. Upon information and belief, the City of Raleigh has waived sovereign immunity by obtaining a general liability insurance policy.

**COUNT II: Fourth Amendment to the U.S. Constitution, via 42 U.S.C. § 1983**

49. Plaintiff incorporates above paragraphs 1 through 48 by reference as if fully set forth herein.

50. The Fourth Amendment ordinarily requires that a law enforcement officer obtain a judicial warrant prior to entering a home without permission. *Riley v. California*, 573 U. S. 373, 382.

51. An officer may make a warrantless entry when "the exigencies of the situation," considered in a case-specific way, create "a compelling need for official action and no time to secure a warrant." *Kentucky v. King*, 563 U. S. 452, 460; *Missouri v. McNeely*, 569 U. S. 141, 149.

52. A tip from a known or anonymous source may provide reasonable cause to detain a person if it includes some facts that are verified by police. *Alabama v. White* 496 U.S. 325 (1990).

53. An officer may lawfully search a home if a resident voluntarily gives consent to the search. For a consent search to be constitutionally valid, the consent must be voluntarily given by a person with proper authority. The government has the burden of proving that an individual voluntarily consented to the search. In determining whether an individual voluntarily consented to a search, the reviewing court should consider the totality of the circumstances surrounding the consent. *Schneckloth v. Bustamonte*, 412 U.S. 218.

54. Reviewing courts must determine on the basis of the totality of the circumstances whether consent has been freely given or has been coerced. Schneckloth v. Bustamonte, 412 U.S. 218, 231–33 (1973). See also Ohio v. Robinette, 519 U.S. 33 (1996).

55. Defendants knew or should have known that absent a warrant or freely given, voluntary consent from a person reasonably authorized to give consent to enter into the home, they could not lawfully enter Plaintiff's home.

56. Defendants knew or should have known that given the totality of the circumstances, the lack of exigent circumstances, and given the actions they undertook in forcibly pulling the Plaintiff from her home, surrounding her and demanding entry to her home, that even if Defendants had consent from Krystal Reynolds to enter the residence, that consent was not voluntary, and therefore; they lacked the legal authority to enter Plaintiff's home.

57. Defendants knew or should have known that given the totality of the circumstances, having been assaulted by an officer, only authorizing a limited search, and that the Plaintiff only authorized access to home after being surround by armed officers and be repeatedly asked for entrance, that the consent was not voluntary.

58. Defendants knew or should have known that the circumstances leading to the discovery of the two individuals in the house were in violation of the Fourth Amendment, yet the officer proceeded to enter and search the Plaintiff's home regardless.

**COUNT III: Fourth Amendment to the U.S. Constitution, via 42 U.S.C. § 1983**

59. Plaintiff incorporates above paragraphs 1-58 by reference as if fully set forth herein.

60. The Fourth Amendment requires that any arrest be based on probable cause. Whether or not probable cause exists depends on the totality of the circumstances, consisting of everything that the arresting officers knew or reasonably believed at the time the arrest was made. A lack of probable cause will render a warrantless arrest invalid, and any evidence resulting from that arrest will have to be suppressed.

61. Probable cause exists in situations in which "the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that 'an offense has been or is being committed.'" *Carroll v. United States*, 267 U.S. 132, 162 (1925).

62. Defendants Singh knew or should have known that absent a valid arrest warrant and absent a totality of circumstances giving rise to a reasonable person believing that a crime is or is about to be committed, the officers did not have probable cause to arrest Krystal Reynolds, and therefore the arrest was invalid.

63. Defendants Singh placed Plaintiff under arrest at the moment he reached across the threshold of the doorway into the home, grabbing her, and telling her she had to comply with the Defendant's instructions and that the Defendant would not let go of the Plaintiff.

64. Defendant Singh and Gerganous knew or should have known that the totality of the circumstances, consisting of their actions in confronting the Plaintiff, questioning her, and demanding entry to her home, as well as the Plaintiff's response in initially cooperating with the officers, would not give rise to a reasonable person believing that a crime was being or about to be committed.

65. Defendants Singh and Gerganous knew or should have known that, under the totality of the circumstances, the Plaintiff was not a threat to herself or the community, and that absent their actions, a breach of the peace would not have occurred.

### COUNT IV: N.C. Constitution Article 1, Section 19

66. Plaintiff incorporates paragraphs 1 through 65 by reference as if fully set forth herein.

67. Under the North Carolina Constitution, "[n]o person shall be taken, imprisoned, or disseized of his freehold, liberties, or privileges, or outlawed, or exiled, in in any manner deprived of his life, liberty, or property, but by the law of the land." N.C. Const. Art I, Section 19.

68. Plaintiff's rights under Article 1, Section 19 of the North Carolina Constitution were violated in the following ways:

    a. Defendants in their official capacity, without probable cause, warrant, or voluntary consent, entered Plaintiff's home, by reaching inside to grab her.

    b. Defendants Singh and Geerganous in their official capacity, without probable cause or warrant, seized Plaintiff.

    c. Defendants Singh and Gerganous in their official capacity, without probable cause or warrant, arrested Plaintiff.

69. As a result of Defendants Singh and Gerganous conduct in their official capacity, Plaintiff was damaged as provided above.

70. There are no adequate state law remedies available to Plaintiff against the Defendants in their official capacity.

**COUNT V: FALSE IMPRISONMENT- OFFICER SINGH INDIVIDUALLY**

71. Plaintiff incorporates above paragraphs 1 through 70 by reference as if fully set forth herein.

72. Defendant Officer Singh intentionally and unlawfully detained Plaintiff against her will, when he reached inside the home, grabbed her, and told her that she must step outside.

73. Defendant Singh lacked any legitimate reasonable suspicion that Plaintiff had committed a crime.

74. Defendant Singh had no reason to detain Plaintiff because Defendants did not have probable cause for arrest.

75. Defendant Singh additionally knew or should have known that Plaintiff was not committing an offense and could not reasonably believe that Plaintiff was going to commit an offense.

76. During testimony associated with the State charges against Mrs. Reynolds, Officer Singh testified that Mrs. Reynolds has no legal obligation to tell her if the men were in her home, to interact with the officers, nor allow the officers to search her home.

## **COUNT VI: TRESPASS TO LAND- DEFENDANTS INDIVIDUALLY**

77. Plaintiff incorporates above paragraphs 1 through 76 by reference as if fully set forth herein.

78. The Fourth Amendment requires that all searches be conducted with a proper warrant, under exigent circumstances, or with voluntary consent.

79. Officers do not possess a warrant, their actions on the property must be customary to a normal visitor. When an officer's actions become inconsistent with normal customary behavior of guest, the officers are now trespassing. Florida v. Jardines, 569 U.S. 1 (2013).

80. The Defendants Singh and Gerganous knew or should have known there was no valid warrant to search the Plaintiff's home, no exigent circumstances were present, and consent was not voluntary.

81. Consent was not voluntary because officers had already told her she did not have to consent, but then entered the home, grabbed her, and physically forced her from home.

82. On February 15, 2022, Plaintiff was the lawful possessor of the searched home.

83. Under North Carolina, a land-holder only has to tell a guest one time they are not welcome on the property. A person commits the offense of second degree trespass if, without authorization, he enters or remains on premises of another, After he has been notified not to enter or remain there by the owner, by a person in charge of the premises, by a lawful occupant, or by another authorized person, that guest has committed the crime of second degree trespass.

84. Defendants Sing and Gerganous trespassed by remaining on Plaintiff's property after being told she did not want them there and they could not search the home.

85. Defendants Singh and Gerganous interfered with Plaintiff's rights to her home when they searched her property without probable cause, a warrant, or voluntary consent.

86. At the time the Defendants Singh and Gerganous searched Plaintiff's home, they had no probable cause, warrant, or voluntary consent to search, and therefore had no lawful basis to interfere with Plaintiff's home.

## COUNT VII: BATTERY

87. Plaintiff incorporates above paragraphs 1 through 86 by reference as if fully set forth herein.

88. Officer Singh battered the Plaintiff when he intentionally, and without justification, offensively contacted the Plaintiff's body by grabbing her arm and refusing to let go. This offensive contact caused bruising and physical injury to the plaintiff.

89. Police officers of the City of Raleigh battered Plaintiff by intentionally and offensively contacting Plaintiff's body when they grabbed her arm, pulled her from her home, pinned her against her will, pressed on her knees, pulled her neck, strained her wrists and arms, and forcibly placed her into handcuffs.

90. As a result of the battery, the Plaintiff developed several bruises on her left arm and wrists. The Plaintiff also received several cuts to her wrist. Additionally, as a result of the battery, the Plaintiff developed post-traumatic stress and mental health issues. For these medical issues, the Plaintiff sought treatment from Wake Med emergency care and her Primary Medical care and has incurred medical bills associated with treatment and pain and suffering.

## COUNT VIII: ASSAULT

91. Plaintiff incorporates above paragraphs 1 through 90 by reference as if fully set forth herein.

92. Defendants Singh and Gerganous assaulted Plaintiff by unlawfully offering or attempting to injure her with apparent present ability to effectuate the injury under the circumstances creating fear of imminent peril when the Defendants grabbed plaintiff and pulled her from her home, demanding entrance to her home, and accusing her of housing two individuals.

## COUNT IX: NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

93. Plaintiff incorporates above paragraphs 1 through 92 by reference as if fully set forth herein.

94. That Defendant Singh and Defendant Gerganous had a duty to act in accordance with North Carolina Law, Federal Law, and the US Constitution while carrying out their duty as law enforcement officers.

95. The actions and behavior Defendant Singh and Defendant Gerganous on the night alleged were negligent as they were beyond the scope of their authority.

96. It was reasonably foreseeable that such behavior would cause severe emotional distress to the plaintiff.

97. That such behavior did in fact cause extreme emotion distress.

98. Since the time of the Plaintiff's interactions with the defendant officers, Plaintiff had to spend several of thousands of dollars to stay at an AirBnB, because she did not feel safe in returning home.

99. Since the time of the Plaintiff's interactions with the defendant officers, Plaintiff had to seek mental health treatment and has been diagnosed with PTSD.

100. Since the time of the Plaintiff's interactions with the defendant officers, Plaintiff had to refused to interact with officers at her home; even when she need to file felony criminal charges, because she was scared officers would enter her home without consent or arrest her again.

## COUNT X: *MONELL v. DEP'T OF SOCIAL SERVS*, 436 U.S. 658 (1977)- DEFENDANTS CITY OF RALEIGH

101. Plaintiff incorporates above paragraphs 1 through 100 by reference as if fully set forth herein.

102. The Defendant City of Raleigh, with deliberate indifference, maintained a policy, custom, or pattern and practice of promoting, facilitating, and condoning improper, illegal, and unconstitutional techniques implemented by Defendant Raleigh Police Department and its staff, specifically promoting unconstitutional searches and seizures.

103. It would have been plainly obvious to a reasonable policymaker that such policies, customs, or patterns and practices would lead to violations of the constitutional rights of individuals that have been stopped or investigated by the Raleigh Police Department.

104. The City of Raleigh's policies, customs, or patterns and practices led to violations of the constitutional rights of the Plaintiff during an investigation by the Raleigh Police Department or its staff and agents.

105. There have been numerous civil rights lawsuits against Raleigh, Raleigh Police Department, and Raleigh Police officers over that past three years, giving Raleigh and Raleigh Police Department notice of its improper policies or pattern and practice of promoting, facilitating, and condoning improper, illegal, and unconstitutional techniques.

106. The wrongful acts and omissions that caused the unconstitutional search and seizure of the Plaintiff were carried out pursuant to Defendant City of Raleigh's policies, customs, patterns, and/or practices.

107. Defendants City of Raleigh and the Raleigh Police Department, by failing to examine its policies regarding entrance of dwellings, practice for obtaining warrants, searching of dwellings without and with warrant, placing individuals under arrest without a warrant, the handling of individuals during the course of an investigation and arrest, and failing to properly train its officers regarding the aforementioned directly and proximately caused Plaintiff to be subjected to an unconstitutional search and seizure which violates all standard of decency and constitutes deliberate indifference to the Constitution of the United States.

108. At all times, Defendant City of Raleigh and the Raleigh Police Department knew or should have known its conduct was in violation of the Plaintiffs' constitutional rights.

109. That Plaintiff has suffered damages as a direct and foreseeable result of Defendant's deliberate indifference in excess of $1,000,000 an amount to be determined at trial.

## COUNT XI: RESPONDEAT SUPERIOR OF CITY OF RALEIGH

110. Plaintiff incorporates the above paragraphs 1 through 110 by reference as if fully set forth herein.

111. A Defendant may be held liable when the actions of its employees are within the scope of the Defendant employee's scope of work.

17

112. Defendant Singh and Gerganous are employed as law enforcement officers.

113. Law enforcement officers are responsible for making the initial determination of whether someone has committed a crime, obtaining consent to enter a domicile, in determining if exigent circumstances exist to allow warrantless entry into a person's domicile, enter homes during times of exigent circumstances, make determination if there is sufficient evidence for an arrest, and to determine what force is deemed reasonable force.

114. Defendant City of Raleigh is liable for the assault, battery, and false imprisonment committed against Plaintiff by Defendants Gerganous and Singh. The City of Raleigh employed the officers, who committed the assault, battery, and false imprisonment while acting within the scope of their employment.

## PUNITIVE DAMAGES

115. Plaintiff incorporates the above paragraphs 1 through 115 by reference as if fully set forth herein.

116. A factfinder may award punitive damages if the Defendants' conduct "was malicious, oppressive or in reckless disregard of the Plaintiff's rights.

117. Conduct is in reckless disregard of the Plaintiff's rights if, under the circumstances, it reflects complete indifference to the Plaintiff's safety or rights, or if the Defendant acts in the face of a perceived risk that its actions will violate the Plaintiff's rights under both state and federal law.

118. An act or omission is oppressive if the Defendant injures or damages or otherwise violates the rights of the Plaintiff with unnecessary harshness or severity, such as by misusing or abusing authority or power or by taking advantage of some weakness or disability or misfortune of the Plaintiff.

119. Defendants' actions show a complete indifference to Plaintiff's Fourth amendment rights under the Constitution of the United States. Defendants willfully or recklessly subjected Plaintiff to an unconstitutional search and seizure depriving her of her liberty and property in violation of the Fourth amendment for which all Defendants are liable and for which Plaintiff should be awarded compensatory and punitive damages in an amount of Three times the amount of damages determined at trial.

## **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff prays the Court for the following relief:

1. That this Court award compensatory damages in an amount greater than one million and 00/100 dollars ($1,000,000.00), to be shown at trial;

2. That this Court award punitive damages in an amount greater than one million and 00/100 dollars ($1,000,000.00), to be shown at trial.

3. That this Court award Plaintiff's pre-judgment and post-judgment interest and recovery of costs, including reasonable attorney's fees, pursuant to 42 U.S.C. § 1988 and 42 U.S.C. § 1920;

4. That the Plaintiff has a trial by jury on all issues and claims set forth in this Complaint;

5. That this Court retain jurisdiction of this matter for the purpose of enforcing orders of this Court; and

6. That this Court grant such other and further relief as this Court deems equitable and just under the circumstances.

Respectfully submitted this the 8th day of June, 2023.

s/Jeff Dobson
N.C. State Bar: 54808
Dobson Law Firm, PLLC
1130 Situs Court, Suite 240
Raleigh, N.C. 27511
Telephone: (919) 591-2240
Email: jdobson@dobsonlawnc.com
*Attorney for the Plaintiff*