IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:23-CV-207-FL

| | | |
|---|---|---|
| KRYSTAL D. REYNOLDS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| M.M. SINGH, individually and in his | ) | |
| official capacity as Officer of Raleigh | ) | ORDER |
| Police Department; RICHARD A. | ) | |
| GERGANOUS, individually and in his | ) | |
| official capacity as Officer of Raleigh | ) | |
| Police Department; and CITY OF | ) | |
| RALEIGH, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff commenced this civil rights action by complaint filed April 18, 2023, against defendants M.M. Singh ("Singh"), Richard A. Gerganous ("Gerganous"), and the City of Raleigh ("Raleigh"). Defendants Raleigh, and Singh and Gerganous in their official capacities (collectively, the "city defendants") and defendants Singh and Gerganous in their individual capacities, bring separate motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (DE 17, DE 20). Also pending is defendants Singh and Gerganous's motion to seal state magistrate's orders submitted in support of their motion to dismiss. (DE 25). For the following reasons, the city defendants' motion to dismiss is granted in part and denied in part. Motion to dismiss separately made by defendants Singh and Gerganous similarly is granted in part and denied in part. Defendants Singh and Gerganous's motion to seal is dismissed as moot.

## STATEMENT OF THE CASE

Plaintiff asserts in the operative amended complaint, filed June 8, 2023, constitutional claims under 42 U.S.C. § 1983 for false arrest, illegal search, and use of excessive force (Counts I, II, and III) against defendants Singh and Gerganous and claims under the North Carolina State Constitution (Count IV) against city defendants. Plaintiff brings a claim for false imprisonment against defendant Singh (Count V), and trespass to land against both defendants Singh and Gerganous (Count VI). Plaintiff claims for battery by defendant Singh and other officers (Count VII), assault against defendants Singh and Gerganous (Count VIII), and negligent infliction of emotional distress (Count IX). Plaintiff seeks also to recover against defendant Raleigh under § 1983 on account of its own constitutional violations accruing from illegal policies and practices (Count X), and on the theory of respondeat superior for the assault, battery, and false imprisonment variously pleaded against defendants Singh and Gerganous (Count XI). Plaintiff seeks compensatory and punitive damages, attorneys' fees, interest, and costs.

City defendants argue that plaintiff has failed sufficiently to allege any § 1983 claim against them, and her claims under North Carolina's Constitution must fail because she has adequate state remedies. Plaintiff's claim based on respondeat superior fails with reference to defendants Singh and Gerganous's motion to dismiss directed against her claims for assault, battery, and false imprisonment against them, individually.

In defense, defendants Singh and Gerganous raise the shield of immunity with respect to the § 1983 claims and underlying state law claims. Plaintiff's § 1983 claims and state law claims for false imprisonment, trespass, battery, and assault also should be dismissed for substantive reasons where, it is contended, probable cause existed, reasonable force was necessary to be used, and plaintiff voluntarily consented to search. Defendants Singh and Gerganous rely on certain

2

orders entered by a state magistrate judge finding probable cause for her arrest for resisting a public officer, and three counts of assault on a government official, which are the subject of the pending motion to seal. Reliance also is placed upon corresponding judgment in that criminal case where plaintiff pleaded guilty to three counts of assault.

Plaintiff seeks in responses to the motions before the court to distinguish between defendants' actions towards her before she entered into any physical altercation with police, and those associated with that altercation. She contends her § 1983 claims all arose before any altercation. Any consent she gave, plaintiff contends, was not free and voluntary but, rather, the result of coercion. Immunity does not apply under the facts of this case, plaintiff argues, to the § 1983 claims or underlying state law claims. Plaintiff argues the doctrine of respondeat superior liability remains viable.

Defendants Singh and Gerganous, with consent of plaintiff, were allowed to file under seal a video exhibit containing clips from defendant Singh's body worn camera ("BWC") capturing the encounter with plaintiff ("video"), to which reference is made in their reply.

## STATEMENT OF FACTS

The relevant facts alleged in the complaint[1] may be summarized as follows. On the evening of February 15, 2022, defendants Singh and Gerganous, officers with the Raleigh Police Department ("RPD"), (compl. ¶ 8), responded to "a tip that two persons suspected of felony drug possession entered plaintiff's residence." (Id. ¶ 9). The officers' body-worn cameras captured

---

[1]     Hereinafter, all references to the "complaint" ("compl.") are to the operative amended complaint (DE 10).

3

"[t]he majority of the dialogue between" defendants Singh and Gerganous and plaintiff, (id. ¶ 10), and plaintiff's "doorbell camera [also captured a] portion of the encounter."  (Id. ¶ 11).

"[A]t approximately 9:11pm," defendant "Singh questioned . . . plaintiff in the street" in front of her house, "asking [plaintiff] what she was doing and whether two people entered her home." (Id. ¶ 12).  Plaintiff told defendants Singh and Gerganous "that she was replacing her Ring camera battery . . . on her front porch, that no one entered her home, and . . . she was the only one who resided in the residence with her pets."  (Id. ¶ 13).

"[A]t approximately 9:28pm," two officers with the RPD, including defendant Singh, returned to "[p]laintiff's home and knocked on her door." (Id. ¶ 14).  Plaintiff answered her door and "primarily [defendant] Singh . . . began questioning" her. (Id. ¶ 15).  Defendant Singh said to plaintiff, "[w]ho were the two guys that came in here?" and "[w]e know two guys came in here." (Id.).  Plaintiff "answered the officers and told them no one had entered her home."  (Id. ¶ 16). The officers "then asked to enter the home," and plaintiff asked whether she was "supposed to do that[.]"  (Id. ¶ 17).  Defendant Singh replied, "it's up to you, I'm not saying you do, I'm not saying you don't[.]"  (Id.).

Plaintiff "then told the officers that they could look around outside but that [plaintiff] was not comfortable with them entering her house."  (Id. ¶ 18).  Defendant Singh "then repeatedly demanded" for plaintiff to "step outside her house."  (Id. ¶ 19).  "Plaintiff refused," (id. ¶ 20), and defendant Singh "reached into the house, breaking the threshold, and forcibly grabbed . . . [p]laintiff by the arm."  (Id. ¶ 21).  Plaintiff "repeatedly told [defendant Singh] not to touch her or grab her and asked" defendant Singh "to let her go."  (Id. ¶ 22).  Defendant Singh "refused . . . and, while grasping and pulling on [plaintiff's] arm, continually demanded that she step outside[.]" (Id. ¶ 23).  Defendant Singh "then stated that [the officers] were getting a search warrant and that

4

no one was allowed in the house[.]" (Id. ¶ 24). Plaintiff "continued to ask [defendant Singh] to let her go," but defendant Singh "forcibly pull[ed] plaintiff out of her house." (Id. ¶ 25).

Once on the front porch, "the officers continue[d] demanding that . . . [p]laintiff allow the officers to search the house," (id. ¶ 27), "bombard[ing]" her until eventually she "acquiesce[d] and allow[ed] them entry." (Id. ¶ 32). While conducting their search, "the [RPD] officers found two individuals in the house." (Id. ¶ 33). "After discovering the individuals, [defendant] Singh then told . . . [p]laintiff that she was going over to his police car, either in cuffs or out of cuffs." (Id.). Plaintiff refused defendant Singh's directions, "an altercation between the parties erupted," (id.), and "[p]laintiff . . . attempt[ed] to prevent the officers from handcuffing her." (Id. ¶ 34). Plaintiff told the officers "to leave her alone, to not touch her, and repeatedly ask[ed] . . . why she was being arrested." (Id.). The RPD officers stated that "[p]laintiff was . . . being arrested for assaulting an officer and delaying an investigation by not voluntarily interacting with the officers." (Id. ¶ 35). Plaintiff responded that "she only fought the officers because they had no right to arrest her and were assaulting her." (Id. ¶ 36).

After being arrested, plaintiff "informed the officers that they were hurting her, pressing the handcuffs into her wrists, and . . . injuring her by kneeling on and pressing into her knee and pulling on her neck." (Id.). Plaintiff sustained "severe bruises on her left arm and wrists . . . cuts [on] her wrist[,] and a black eye," and eventually sought medical treatment for these injuries and mental health issues stemming from the encounter. (Id. ¶ 37).

Hearings in North Carolina state court ensued, and defendant Singh "testified that [plaintiff] ha[d] no legal obligation to tell [him] if the men were in her home, to interact with the officers, [or to] allow the officers to search her home." (Id. ¶ 38). A finding that defendant Singh

5

lacked sufficient grounds to enter plaintiff's home was made, and associated resist, delay, and obstruct charges against plaintiff were dismissed. (See id. ¶ 26).

**COURT'S DISCUSSION**

A.     Motion to Seal

Filing of this motion engendered the clerk who acted August 2, 2023, in regular docket review, to bring to the attention of defendants Singh and Gerganous the fact that repetitive filings made by them through counsel the prior month contained prohibited information, with reference to Rule 5.2 of the Federal Rules of Civil Procedure. The form notice stated that a temporary seal of information on the public docket had been put in place for a period of seven days which would be removed absent filing of the appropriate motion and redacted copies within that time period. Defendants moved within the seven day period on August 8, 2023, with plaintiff's consent, to permanently seal what is denominated as "Exhibit 1", state court magistrate's orders filed in support of their motion to dismiss. (DE 25).

Congress has required the Supreme Court to "prescribe rules . . . to protect privacy and security concerns related to electronic filing of documents." Pub. L. No. 107-347, § 205(c)(3)(A)(i), 116 Stat. 2899, (2913–15). "To the extent that such rules provide for the redaction of certain categories of information in order to protect privacy and security concerns, such rules shall provide that a party that wishes to file an otherwise proper document containing information may file an unredacted document under seal, which shall be retained by the court as part of the record, and which, at the discretion of the court . . . shall be either in lieu of, or in addition, to, a redacted copy in the public file." Id. § 205(c)(3)(A)(iv).

In compliance with this congressional directive, Federal Rule of Civil Procedure 5.2 provides that "in an electronic or paper filing with the court that contains an individual's social-

security number, taxpayer-identification number, or birth date . . . a party or nonparty making the filing may include only: (1) the last four digits of the social-security number and taxpayer-identification number; [or] (2) the year of the individual's birth." Fed.R.Civ.P. 5.2(a).

Where as here, defendants Singh and Gerganous filed unredacted magistrate's orders containing plaintiff's birth date in full (see, e.g., DE 23-1 at 2, 5), as well as her state driver's license number (see id.), Exhibit 1 falls under the purview of Rule 5.2(a) and the corresponding statutory provision at § 205(c)(3)(A)(iv). "[T]he United States Code includes a myriad of statutes where Congress has mandated the sealing of certain sensitive information filed with a court." Am. Civil Liberties Union v. Holder, 673 F.3d 245, 257–58 n.8 (4th Cir. 2011) (listing § 205 and Rule 5.2 as examples).

Thus, under this authority, the unredacted version of Exhibit 1 (DE 21-1, DE 23-1) filed in support of defendants Singh and Gerganous's motion to dismiss shall be maintained under seal. The redacted version of Exhibit 1 (DE 24) is received in the record and made publicly available in accord with Rule 5.2 and § 205(c)(3)(A)(iv).[2]

In the redacted version plaintiff's date and month of birth, together with her driver's license number repeatedly appearing have been removed. Also removed is the F.B.I. file number assigned, the inclusion of which on the public docket the court assumes without deciding could be said also to violate the rule.

The clerk's August 2, 2023, notice of deficiency refers to a waiver by defendants of the right to keep this information sealed if no motion was filed by August 9, 2023. Action was

---

[2] The court previously granted defendant Singh and Gerganous's motion to permanently seal the BWC footage in its December 7, 2023, order. This was based on the recognition that the BWC footage includes images of witnesses on the scene, including an informant, upon whose statements the RPD officers relied in conducting their investigation, and potential subjects in other criminal investigations. Where the exhibit is a video not capable of redaction, the court determined that no less drastic alternative to sealing exists.

necessary to be taken by defendants Singh and Gerganous's counsel to correct error made but it is not correct to say these defendants could waive congressional edict codified by procedural rule making private certain of plaintiff's personal information. For this reason, motion to seal made by defendants Singh and Gerganous is DISMISSED as MOOT.

B.     Motions to Dismiss

1.     Standard of Review

"To survive a motion to dismiss" under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).[3] "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009).

2.     Analysis

The court starts with consideration of arguments made with reference to plaintiff's claims against defendants Singh and Gerganous.

a.     Claims Against Defendants Singh and Gerganous

Plaintiff brings Fourth Amendment claims under 42 U.S.C. § 1983 for false arrest, illegal search, and use of excessive force against defendants Singh and Gerganous. Defendants Singh

---

[3]     Internal citations and quotation marks are omitted from all citations unless otherwise specified.

and Gerganous assert a defense of qualified immunity to all of plaintiff's Fourth Amendment claims. "To overcome an official's claim of qualified immunity, the plaintiff must show: '1) that the official violated a statutory or constitutional right, and 2) that the right was clearly established at the time of the challenged conduct.'" Attkisson v. Holder, 925 F.3d 606, 623 (4th Cir. 2019) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011)). The court "may address these two questions in the order . . . that will best facilitate the fair and efficient disposition of each case." Raub v. Campbell, 785 F.3d 876, 881 (4th Cir. 2015).

Plaintiff also brings state law claims for false imprisonment, trespass to land, battery, assault, and negligent infliction of emotional distress variously pleaded against defendants Singh and Gerganous. Defendants Singh and Gerganous assert that public official immunity bars all of plaintiff's state law claims, and alternatively, that plaintiff has failed to state a plausible claim for relief under state law for the same reasons her claims under federal law fail.

i. Claims against Defendant Gerganous

As a threshold matter, where none of the complaint's allegations are proffered against defendant Gerganous individually, all claims against defendant Gerganous must be dismissed. "Courts have been critical of complaints that fail to isolate the allegedly unconstitutional acts of each defendant, or that make only categorical references to defendants." Langford v. Joyner, 62 F.4th 122, 125 (4th Cir. 2023); see also King v. Riley, 76 F.4th 259, 269 (4th Cir. 2023) ("As liability here is personal, a complaint must contain specific allegations of each individual's conduct[.]").

While plaintiff's complaint mentions defendant Gerganous generally, it only asserts specific factual allegations against defendant Singh. (See generally compl.); see also Langford, 62 F.4th at 125 ("The courts have reasoned that requiring specific factual allegations for each

9

defendant gives fair notice to that defendant of the plaintiff's claim and the underlying factual support."). Accordingly, all claims against defendant Gerganous are dismissed.

ii. Section 1983 Claim for False Arrest

Plaintiff alleges that defendant Singh violated the Fourth Amendment when he unlawfully seized plaintiff by grabbing plaintiff's arm while she stood in the doorway of her home and pulled her outside. In response, defendant Singh asserts a defense of qualified immunity and argues that his initial seizure of plaintiff does not provide a basis for a false arrest claim because the seizure was supported by reasonable suspicion. The court disagrees.

The court first addresses whether plaintiff has pleaded facts plausibly alleging "that the official violated a statutory or constitutional right." Attkisson, 925 F.3d at 623. Section 1983 claims for false arrest properly are evaluated under the Fourth Amendment. See Rogers v. Pendleton, 249 F.3d 279, 294 (4th Cir. 2001) (providing that claims of false arrest and false imprisonment "are essentially claims alleging a seizure of the person in violation of the Fourth Amendment"). To establish a § 1983 claim based on the Fourth Amendment for false arrest, a plaintiff must show that the seizure was made without probable cause. See Massey v. Ojaniit, 759 F.3d 343, 356 (4th Cir. 2014). Probable cause exists when, under the totality of the circumstances, there is a "fair probability" that criminal activity has taken place. Illinois v. Gates, 462 U.S. 213, 246 (1983).

Even when probable cause exists, however, "[i]t is a basic principle of Fourth Amendment law . . . that searches and seizures inside a home without a warrant are presumptively unreasonable." Kentucky v. King, 563 U.S. 452, 459 (2011); see also Carroll v. United States, 267 U.S. 132, 153 (1925) (recognizing that a heightened standard for searches of and seizures inside homes has existed "practically since the beginning of the government"). "[I]t is a settled

10

rule that warrantless arrests in public places are valid, but, absent another exception such as exigent circumstances, officers may not enter a home to make an arrest without a warrant, even when they have probable cause." Collins v. Virginia, 584 U.S. 586, 595–96 (2018). "[P]olice officers need either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." Kirk v. Louisiana, 536 U.S. 635, 638 (2002) (emphasis added).

Plaintiff has alleged sufficient facts to plausibly infer that defendant Singh seized her from her home in violation of the Fourth Amendment. The court has relied on the BWC footage "in the event of conflict between the bare allegations of the complaint and" the footage. Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). As for those portions of the complaint not "clearly or blatantly contradicted" by the BWC footage, see Witt v. West Virginia, 633 F.3d 272, 277 (4th Cir. 2011), the court "accept[s] the complaint's factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." Starbuck v. Williamsburg James City Cnty. Sch. Bd., 28 F.4th 529, 532 (4th Cir. 2022).

"[T]he common law consider[s] the application of force to the body of a person with intent to restrain to be an arrest[.]" Torres v. Madrid, 592 U.S. 306, 311–12 (2021); see also California v. Hodari D., 499 U.S. 621, 624 (1991) ("To constitute an arrest . . . the mere grasping or application of physical force with lawful authority, whether or not it succeeded in subduing the arrestee, was sufficient."). And, "[c]ommon law arrests are Fourth Amendment seizures." Torres, 592 U.S. at 311. Defendant Singh does not challenge that he effected a common law arrest when he reached across plaintiff's door and grabbed plaintiff by the arm. (See generally DE 23, DE 33).

Here, plaintiff alleges that defendant Singh returned to knock on plaintiff's door and ring her doorbell more than fifteen minutes after first arriving on the scene. (Compl. ¶¶ 12, 14). After plaintiff answered her door and following a brief verbal exchange, plaintiff alleges that defendant

Singh "repeatedly demanded that . . . [p]laintiff step outside her house." (Id. ¶¶ 16–19). Plaintiff alleges that she refused to do so and defendant Singh proceeded to "reach[] into the house, break[] the threshold, and forcibly grab[] . . . [p]laintiff by her arm." (Id. ¶¶ 20–21). Plaintiff asserts that she repeatedly "told the officer not to touch her or grab her and asked the officer to let her go." (Id. ¶ 22).

While plaintiff alleges that defendant Singh "refused to let . . . [p]laintiff go," (id. ¶ 23), the BWC footage shows that defendant Singh physically disengaged from plaintiff but repeatedly told her to "step out real quick." (Video 0:31:07–14). Defendant Singh then said to plaintiff, "if we're getting a search warrant, then no one is allowed in this house right now." (Id. at 0:31:15–18). While the footage is not clear, it appears that defendant Singh grasped plaintiff's arm a second time as she stood in the threshold of her doorway, twice stating, "let's step out right here." (Id. at 0:31:15–21). As defendant Singh made contact, plaintiff responded, "don't grab me" and "please don't" before defendant Singh stated, "ok, if you don't want me to grab you, then we're stepping out." (Id. at 0:31:20–24).

In both instances where defendant Singh grabbed plaintiff's arm, the complaint alleges, and the BWC footage shows, that defendant Singh "by means of physical force or show of authority, terminate[d] or restrain[ed] [plaintiff's] freedom of movement." Brendlin v. California, 551 U.S. 249, 254 (2007). Defendant Singh repeatedly directed plaintiff to "step out" and stated that he would only cease "grabbing" plaintiff if she exited her home. See Torres, 592 U.S. at 317 ("A seizure requires the use of force with intent to restrain.") (emphasis omitted). That defendant Singh's contact with plaintiff's arm was relatively brief does not alter the analysis; "a mere touch can be enough for a seizure." Id.; see also Kaupp v. Texas, 538 U.S. 626, 629 (2003) ("A seizure of the person within the meaning of the Fourth . . . Amendment occurs when, taking into account

12

all of the circumstances surrounding the encounter, the police conduct would have communicated to a reasonable person that he was not at liberty to ignore the police presence and go about his business." Thus, defendant Singh's multiple contacts with plaintiff's arm constituted a seizure.

Still, "[t]he Fourth Amendment does not forbid all or even most seizures – only unreasonable ones." Torres, 592 U.S. at 325. As the Supreme Court has remarked, "searches and seizures inside a home without a warrant are presumptively unreasonable." Brigham City, Utah v. Stuart, 547 U.S. 398, 403 (2006). Here, when defendant Singh initially contacted plaintiff's right arm, plaintiff alleges that defendant Singh broke the threshold of her front doorway and reached into her home. (See compl. ¶ 21). Additionally, immediately after grabbing plaintiff's arm the second time, defendant Singh states "I don't want you in the house at this point." (Video 0:31:28–29) (emphasis added). Thus, where plaintiff's exact location within her front doorway is unclear, and construing all well-pleaded allegations in plaintiff's favor, the court infers that plaintiff was standing in her house when defendant Singh grabbed her.[4]

Defendant Singh asserts that he had reasonable suspicion "to justify a temporary detention of [p]laintiff for investigative purposes," (DE 33 at 5), and cites to cases that define the reasonable suspicion standard and reference the circumstances where an informant's tip can give rise to reasonable suspicion. (See generally id. at 5–8). The cases defendant Singh relies upon do not address the requirement that police officers obtain "either a warrant or probable cause plus exigent circumstances in order to make a lawful entry into a home." Kirk, 536 U.S. at 638; see also Payton v. New York, 445 U.S. 573, 586 (1980) ("[T]he physical entry of the home is the chief evil against

---

[4]     To the extent that the front doorway of plaintiff's home is better considered as "curtilage," the analysis remains the same. "[T]he curtilage . . . warrants the Fourth Amendment protections that attach to the home." Oliver v. United States, 466 U.S. 170, 180 (1984); see also Rogers, 249 F.3d at 287 (affirming the district court's determination that "searches of the curtilage are permissible only when probable cause plus either a warrant or exigent circumstances exist.").

which the wording of the Fourth Amendment is directed."); <u>Silverman v. United States</u>, 365 U.S. 505, 511 (1961) ("At the very core [of the Fourth Amendment] stands the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion."). Therefore, in the absence of a warrant and where defendant Singh does not assert exigent circumstances or some other exception to the Fourth Amendment's warrant requirement, the well-pleaded assertions in plaintiff's complaint and the BWC footage plausibly allege that defendant Singh violated plaintiff's Fourth Amendment right to be free from unreasonable seizures.[5]

The court turns to the second prong of the qualified immunity analysis. Having found that plaintiff has pleaded facts alleging a constitutional violation, defendant Singh bears the burden of showing "that the right was not clearly established at the time [his] conduct occurred." <u>Wingate v. Fulford</u>, 987 F.3d 299, 311 (4th Cir. 2021). "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." <u>Goines</u>, 822 F.3d at 170. "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." <u>Kisela v. Hughes</u>, 584 U.S. 100, 104 (2018). This "do[es] not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." <u>Al-Kidd</u>, 563 U.S. at 741.

While defendant Singh argues he had reasonable suspicion to temporarily detain plaintiff based on an informant's tip, "the Fourth Amendment has drawn a firm line at the entrance to the house." <u>Payton</u>, 445 U.S. at 590. "Absent exigent circumstances, that threshold may not reasonably be crossed without a warrant." <u>Id.</u> Here, seeking to remove plaintiff from her home,

---

[5] The parties spend considerable time in their briefing assessing the reliability of the tip proffered by the informant at the scene. However, in assessing plaintiff's false arrest claim, the court need not decide whether the facts alleged in the complaint and the BWC footage suggest that the informant's tip supported the officers' reasonable suspicion or probable cause.

14

defendant Singh reached across plaintiff's front door and grabbed plaintiff's right arm on two occasions. Defendant Singh initially approached plaintiff in her front yard nearly 15 minutes after arriving on scene and returned to plaintiff's home almost 30 minutes into his investigation. While defendant Singh may have had good reason to approach plaintiff, a reasonable officer in defendant Singh's position would have known that plaintiff "had a clearly established right to be free of the officers' [seizure in her] home, absent probable cause plus either a warrant or exigent circumstances." Rogers, 249 F.3d at 290.

Defendant Singh thus is not entitled to qualified immunity on his motion to dismiss with regard to plaintiff's false arrest claim arising from defendant Singh's initial contacts with plaintiff.[6]

iii.    Section 1983 Claim for Illegal Search

Plaintiff claims that defendant Singh violated the Fourth Amendment when he, alongside other officers with the RPD, unlawfully searched plaintiff's home after plaintiff involuntarily consented. In response, defendant Singh argues that plaintiff voluntarily consented to the search and, alternatively, asserts a defense of qualified immunity. The court agrees with defendant Singh.

The court's analysis here turns on the second prong of the qualified immunity analysis. While the court must accept all of plaintiff's well-pleaded allegations as true and construe all inferences in her favor, "the purely legal question of whether the constitutional right at issue was clearly established is always capable of decision at the summary judgment stage or on a motion to dismiss." Ray v. Roane, 948 F.3d 222, 228 (4th Cir. 2020).

---

[6]    In that part where plaintiff's complaint asserts a Fourth Amendment violation after the officers conducted a search of plaintiff's home and formally arrested plaintiff for resisting an officer, see N.C. Gen. Stat. § 14-223, and three counts of assault on a government official, see N.C. Gen. Stat. § 14-33(C)(4), those claims have been abandoned where plaintiff failed to address them in her response in opposition to defendant Singh and Gerganous's motion to dismiss. In any event, plaintiff has failed to allege facts that show it was "obvious no reasonably competent officer would have concluded that a warrant should issue." Malley v. Briggs, 475 U.S. 335, 341 (1986).

15

It is clearly established that the Fourth Amendment prohibits warrantless searches absent voluntary consent. See United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996) (en banc); see also Covey v. Assessor of Ohio Cnty., 777 F.3d 186, 196 (4th Cir. 2015) (quoting Groh v. Ramirez, 540 U.S. 551, 564 (2004) ("[T]he Supreme Court has held that no reasonable officer can 'claim to be unaware of the basic rule, well established by our cases, that, absent consent or exigency, a warrantless search of the home is presumptively unconstitutional.'"). Procurement of voluntary consent "from the individual whose property is searched," however, renders such search lawful. Illinois v. Rodriguez, 497 U.S. 177, 181 (1990). Consent to search is valid if it is (1) knowing and voluntary, and (2) given by one with authority to consent." United States v. Buckner, 473 F.3d 551, 554 (4th Cir. 2007). "[W]hether a consent to a search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined from the totality of all the circumstances." Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). "Whether the individual searched was informed of his right to decline the search is a highly relevant factor" in determining whether consent to search is knowing and voluntary. United States v. Robertson, 736 F.3d 677, 680 (4th Cir. 2013); see also United States v. Mendenhall, 446 U.S. 544, 558–59 (1980) ("Although the Constitution does not require proof of knowledge of a right to refuse as the sine qua non of an effective consent to search, such knowledge was highly relevant to the determination that there had been consent.").

Here, the complaint alleges plaintiff allowed the officers to search her home. (See compl. ¶ 32); (see also Video 0:30:05–12 (after defendant Singh asked plaintiff if the officers could enter and search her home, plaintiff asked if "she's supposed to do that" to which defendant Singh replied that "it's up to you. I'm not saying you do. I'm not saying you don't.")).

Plaintiff suggests that her consent was not voluntary because officers allegedly "stated that [the officers] were getting a search warrant and that no one was allowed in the house." (Compl. ¶ 24). But that allegation is contradicted by the BWC footage where defendant Singh told plaintiff, "if we're getting a search warrant, then no one is allowed in this house right now." (Video 0:31:15–18) (emphasis added). While consent is ineffective when given "only after the official conducting the search has asserted that he possesses a warrant," Bumper v. United States, 391 U.S. 543, 548 (1968), an officer's truthful statement that officers may get a search warrant in the future is "not the type of coercion that threatens to render [consent] involuntary." United States v. Pelton, 835 F.2d 1067, 1073 (4th Cir. 1987); see also United States v. Elie, 111 F.3d 1135, 1146 (4th Cir. 1997) ("The police can give a defendant truthful information, even if that information forces the defendant to make a choice between two unpleasant alternatives."); United States v. Whitehead, 428 F.Supp.2d 447, 452 (E.D. Va. 2006) (finding that consent was voluntary where the defendant provided it only after officers told her they could get a search warrant).

Plaintiff emphasizes that she was allegedly unlawfully seized from her home by defendant Singh and then "bombarded" by defendant Singh and other officers outside her home, arguing that these interactions rendered her consent involuntary. (See compl. ¶ 32 ("Despite already having been forcefully removed from the house, refusing to allow the officers in areas of the home, [d]efendants continue[d] to bombard [plaintiff] until she acquiesce[d] and allow[ed] them entry.")); (see also DE 27 at 9 ("Only after [p]laintiff's will was overborne through violence, seizure, intimidation, repeated accusations and demands for consent did . . . [p]laintiff give-in.")). In civil cases, however, unlawful detentions or seizures do not automatically make succeeding statements of consent involuntary. See United States v. Boone, 245 F.3d 352, 363 (4th Cir. 2001) ("These factors suggest that Boone's will was not overborne and that his consent was voluntary,

even if the <u>Terry</u> stop exceeded permissible bounds."); <u>see also</u> <u>Hyatt, et al. v. Miller, et al.</u>, No. 1:19-cv-00250, 2021 WL 535856, at *17 n.11 (W.D.N.C. Feb. 12, 2021) ("The Fourth Circuit and several other Courts of Appeals have held that consent can be voluntary even if it is procured during an illegal detention, provided that the totality of the circumstances confirms that the consent was not coerced.").

Plaintiff's attempt to distinguish her case from <u>Lattimore</u>, in which the United States Court of Appeals for the Fourth Circuit found that the defendant's consent was voluntary in significant part because it was procured only "after the officer had issued the citations and returned Lattimore's driver's license, indicating that all business with Lattimore was completed and that he was free to leave," is unsuccessful. 87 F.3d at 653. Plaintiff argues in effect that she did not feel free to "decline the officer's requests or otherwise terminate the encounter," <u>id.</u>, because "three armed officers, including [defendant] Singh" repeatedly demanded to search the house and defendant Singh himself "never allow[ed] [plaintiff] to disengage from the officers or return into her home." (Compl. ¶¶ 28, 30). However, the BWC footage shows that during the brief period defendant Singh was with plaintiff outside her home, no officer requested permission to search plaintiff's residence. (Video 0:31:41–32:55).[7] Additionally, plaintiff asserts that she continued to refuse the officers' persistent requests to search her home once she was outside. (<u>See</u> compl. ¶¶ 28, 29 ("Plaintiff [was] told to sit on a box on the front porch and . . . indicate[d] that she [was] uncomfortable with allowing the officers into her home.")); (<u>see also</u> DE 27 at 9 ("Plaintiff denied requests for consent to search, but the officers remained headstrong.")). Plaintiff's refusal to

---

[7]      Just over a minute after plaintiff exited her home, defendant Singh walked away and instructed plaintiff to "just hang tight with these officers." (Video 0:32:54–56). By the time defendant Singh returned to plaintiff outside her front door, other officers on the scene were escorting two individuals out of plaintiff's home. (<u>Id.</u> at 0:39:55–0:40:18). Thus, the BWC footage shows that defendant Singh was not present when plaintiff consented to the search of her home, nor did he personally conduct the search of plaintiff's home. (<u>Id.</u> at 0:32:57–0:39:51).

consent to a search of her home even after she was seized suggests that she was aware of her right to refuse. See Elie, 111 F.3d at 1145 (revocation of consent demonstrated defendant knew of his right to refuse consent); see also Boone, 245 F.3d at 362 (limitation of consent suggested defendant knew he could refuse consent); see also Whitehead, 428 F.Supp.2d at 452 ("Such an initial refusal to search is evidence that Mrs. Whitehead knew of her constitutional right to refuse consent."). Thus, this case bears some of the hallmarks in Lattimore where plaintiff "felt free to decline the officer's requests." 87 F.3d at 653.

Plaintiff's additional allegations that she was previously restrained by officers do not show that defendant Singh violated plaintiff's Fourth Amendment rights. See Elie, 111 F.3d at 1145 ("[A]s we previously noted, neither the drawing of a gun by an arresting officer, nor the handcuffing of the accused establishes involuntariness in and of itself."). Nor do plaintiff's assertions that she was unlawfully pressured where she was "towered over" by "three armed officers" and "subjected to intimidation, repeated accusations[,] and demands for consent." (Compl. ¶ 28); (DE 27 at 9). Repeated demands to search or the presence of multiple armed officers do not necessarily make out a Fourth Amendment violation. See United States v. Azua-Rinconada, 914 F.3d 319, 324 (4th Cir. 2019) (concluding that the officer's statement, "open the door or we're going to knock it down," did not "fatally infect the voluntariness of the consent"); see also Elie, 111 F.3d at 1145 ("Moreover, although there were at least six officers present when Elie granted his consent to search, nothing in the record indicates an environment that was coercive or intimidating."). And other facts proffered by plaintiff, including that plaintiff is a woman who was surrounded by an all-male group of officers and had PTSD stemming from prior police interactions, are "not irrelevant, [but] neither [are] they decisive." Mendenhall, 446 U.S. at 558.

19

Thus, viewing the facts in the light most favorable to plaintiff where not "clearly or blatantly contradicted" by the BWC footage, the scenario facing defendant Singh when plaintiff consented to the search of her home was not one that would cause a reasonable officer to understand his conduct as violative of plaintiff's Fourth Amendment right against an illegal search, as clearly established by then-controlling law. "[I]f a reasonable officer possessing the same particularized information as [defendant Singh] could have, in light of [then-controlling law], believed that his conduct was lawful, then [defendant Singh] is entitled to qualified immunity." McLenagan v. Karnes, 27 F.3d 1002, 1007 (4th Cir. 1994) (emphasis omitted); see also Hyatt, 2021 WL 535856, at *18 ("Therefore, even if a jury could find the totality of these combined circumstances sufficient to negate consent, it was not clearly established that employment of such combination of actions in order to secure consent violated constitutional norms.").

In sum, defendant Singh is entitled to qualified immunity as to plaintiff's illegal search claim pursuant to § 1983 on his motion to dismiss.

iv.    Section 1983 Claim for Excessive Force

Plaintiff next claims that defendant Singh violated the Fourth Amendment when 1) he "forcibly grabbed" and "forcibly pull[ed]," plaintiff out of her home, and 2) formally arrested plaintiff after the discovery of two individuals in her home. In response, defendant Singh argues that plaintiff has failed plausibly to allege a Fourth Amendment violation for use of excessive force, and thus, defendant Singh is entitled to qualified immunity. The court agrees with defendant Singh, finding that plaintiff failed plausibly to allege a constitutional violation with regard to this claim.

"[A]ll claims that law enforcement officers have used excessive force . . . in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth

20

Amendment and its 'reasonableness' standard." Graham v. Connor, 490 U.S. 386, 395 (1989); Hupp v. Cook, 931 F.3d 307, 321 (4th Cir. 2019) ("[P]olice officers are constitutionally permitted to use only that force which is reasonable under the circumstances."). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene[.]" Graham, 490 U.S. at 396; see also Kingsley v. Hendrickson, 576 U.S. 389, 399 (2015) ("[A] court must judge the reasonableness of the force used from the perspective and with the knowledge of the defendant officer.").

The court must consider the following factors: "1) the severity of the crime at issue, 2) whether the suspect poses an immediate threat to the safety of the officers or others, and 3) whether he is actively resisting arrest or attempting to evade arrest by flight." Graham, 490 U.S. at 396 (hereinafter, the "Graham factors"). In addition, the court may consider "[t]he relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force." Kingsley, 576 U.S. at 397. "Ultimately, [the court] must decide whether the totality of the circumstances justifie[d] a particular sort of . . . seizure." Hupp, 931 F.3d at 322.

The complaint does not allege facts permitting an inference that defendant Singh's seizure by reaching across plaintiff's front door and grabbing her by the arm constituted excessive force. As a threshold matter, the court rejects plaintiff's argument that "because the seizure itself was effected in violation of the Fourth Amendment, . . . any force used to effect that seizure was unlawful (or excessive)." (DE 27 at 7); see Hupp, 931 F.3d at 322 (dispensing with the same argument).

The Graham factors weigh in favor of plaintiff. On the first factor, while defendant Singh asserts he had reasonable suspicion to detain plaintiff, his briefs fail to allege plaintiff's suspected

crime at the time he grabbed plaintiff in her front doorway.  See Turmon v. Jordan, 405 F.3d 202, 207 (4th Cir. 2005) ("[T]he severity of the crime cannot be taken into account because there was no crime."); see also Hupp, 931 F.3d at 322 ("[W]e may consider any lack of probable cause for the arrest as we evaluate the reasonableness of the force used.").  Thus, where defendant Singh allegedly seized plaintiff in violation of the Fourth Amendment despite plaintiff's lack of criminal activity, the first Graham factor "weighs heavily in [plaintiff]'s favor."  Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst, 810 F.3d 892, 899 (4th Cir. 2016).  As to the second Graham factor, defendant Singh does not argue that the suspect "pose[d] an immediate threat to the safety of the officers or others," nor are there facts that would support such a conclusion.  Graham, 490 U.S. at 396.  As for the third Graham factor, while plaintiff was not compliant with defendant Singh's instructions to "step out" of her house, plaintiff has plausibly alleged that defendant Singh's demands and actions in seizing plaintiff from her home were unlawful absent a warrant or exigent circumstances.  See Est. of Armstrong, 810 F.3d at 901 ("Noncompliance with lawful orders justifies some use of force, but the level of justified force varies based on the risks posed by the resistance.") (emphasis added).

Still, these factors are not exclusive and serve "to illustrate the types of objective circumstances potentially relevant to a determination of excessive force."  Kingsley, 576 U.S. at 397.  "The nature of the intrusion on a plaintiff's Fourth Amendment rights is generally measured by the amount of force employed to effect the seizure."  Brockington v. Boykins, 637 F.3d 503, 506 (4th Cir. 2011); see also Smith v. Ray, 781 F.3d 95, 101 (4th Cir. 2015) ("To properly consider the reasonableness of the force employed we must view it in full context, with an eye toward the proportionality of the force in light of all the circumstances.").  Here, defendant Singh's initial contact with plaintiff's right arm appears to have lasted for no more than three seconds, (see Video

0:31:02–05), and again, while the BWC footage is not clear, defendant Singh's second contact with plaintiff's arm appears to have lasted for no more than a few seconds. (See id. at 0:31:15–21). Nor does plaintiff specifically allege any physical injuries arising from this initial seizure. See Buchanan v. Jones, 325 F.3d 520, 527 (4th Cir. 2003) ("The extent of the plaintiff's injury is also a relevant consideration.").

Additionally, the Supreme Court has squarely addressed whether officers can "be held liable for injuries caused by the seizure on the ground that they committed a separate Fourth Amendment violation that contributed to their need to use force[.]" Cnty. of Los Angeles, California v. Mendez, 581 U.S. 420, 422–23 (2017). There, the Supreme Court held that "[a] different Fourth Amendment violation cannot transform a later, reasonable use of force into an unreasonable seizure." Id. at 423; see also Cortez v. McCauley, 478 F.3d 1108, 1126 (10th Cir. 2007) ("[I]n a case where police effect an arrest without probable cause or a detention without reasonable suspicion, but use no more force than would have been reasonably necessary if the arrest or detention were warranted, the plaintiff has a claim for unlawful arrest or detention but not an additional claim for excessive force.").

While the court accepts the complaint's well-pleaded factual allegations where not "clearly or blatantly contradicted" by the BWC footage, the footage does not support plaintiff's allegations that defendant Singh "refused to let . . . go, while grasping and pulling on [plaintiff's] arm," (compl. ¶ 23) or that he "overpower[ed] . . . [p]laintiff, forcibly pulling [her] out of her house." (Id. ¶ 25). Effectively, plaintiff is attempting to graft an excessive force claim onto her false arrest claim. See Mendez, 581 U.S. at 431 ("[T]here is no need to dress up every Fourth Amendment claim as an excessive force claim."). Plaintiff does not allege that defendant Singh's contacts with her arm would have been unconstitutional had "the arrest or the detention [been] warranted."

<u>Cortez</u>, 478 F.3d at 1126. "An excessive force claim . . . is not a claim that an officer used reasonable force after committing a distinct Fourth Amendment violation such as an unreasonable entry." <u>Mendez</u>, 581 U.S. at 431; <u>see also</u> <u>Richmond v. Badia</u>, 47 F.4th 1172, 1180 (11th Cir. 2022) ("Unlike a genuine excessive force claim, an artificial excessive force claim – that force was excessive merely because another Fourth Amendment violation occurred – is subsumed in the illegal stop or arrest claim and is not a discrete excessive force claim.").

Thus, where plaintiff's excessive force claim alleges that defendant Singh briefly grabbed plaintiff in her home part and parcel with the allegedly unlawful seizure, plaintiff does not plausibly allege a separate Fourth Amendment violation for excessive force.

The court also rejects plaintiff's excessive force claim as it relates to plaintiff's formal arrest following the discovery of two individuals in her home. Plaintiff relies on <u>State v. Mobley</u>, 240 N.C. 476, 478 (1954), for the proposition that "every person has the right to resist an unlawful arrest." However, where the court has found that qualified immunity bars plaintiff's illegal search claim, that argument is unavailing.[8]

Further, the <u>Graham</u> factors weigh in favor of defendant Singh. Turning to the severity of the crime at issue, the court assumes without deciding that here, resisting a public officer, should be considered minor because plaintiff did not act violently before the confrontation turned physical when defendant Singh attempted to arrest her. However, defendant Singh also proffers state magistrate's orders as an exhibit to his motion to dismiss finding probable cause for both resisting a public officer and assault on a government official, which is a severe offence under the <u>Graham</u> factors. See <u>Hicks v. City of Lynchburg</u>, —— F. Supp. 3d ——, 2023 WL 6456488, at *8 (W.D.

---

[8]    Plaintiff argues that she had a right to resist her formal arrest under <u>Mobley</u> because defendant Singh was "attempting to execute a formal arrest on the basis of an unlawful search." (DE 27 at 11). In turn, the court addresses this argument alone.

Va. 2023); Thompson v. Badgujar, No. 20-cv-1272, 2021 WL 3472130, at *7 (D. Md. Aug. 6, 2021); N.C. Gen. Stat. § 14-34.7 (establishing assault on a law enforcement officer as a felony). "Artificial divisions in the sequence of events do not aid a court's evaluation of objective reasonableness." Rowland v. Perry, 41 F.3d 167, 173 (4th Cir. 1994). Plaintiff submits that she "fought the officers" (compl. ¶ 36), and the magistrate's orders state that plaintiff "did assault and strike" three officers on the scene. (See DE 23-1 at 2). This first factor therefore weighs against a conclusion of excessive force.

Second, plaintiff posed a threat to the officers and others because she physically assaulted defendant Singh and the other officers, for the same reasons discussed with reference to the first Graham factor above.

Third, plaintiff actively resisted arrest. During the struggle between plaintiff and defendant Singh, the magistrate found probable cause that plaintiff kicked officers multiple times and "attempted to bite and picked up a rock and tried to swing it at" defendant Singh. (Id.). Plaintiff's complaint does not dispute that she "resisted" and although the BWC footage is ambiguous, it shows a clear struggle where defendant Singh told plaintiff to "chill out" and "if you bite me, you're going on the ground." (Video 0:40:45–0:41:54). Physically resisting arrest supports the application of force, see e.g., Wilson v. Flynn, 429 F.3d 465, 468 (4th Cir. 2005); Brown v. Gilmore, 278 F.3d 362, 369–70 (4th Cir. 2002), and so this factor cuts in defendant Singh's favor.

Plaintiff alleges that she told the arresting officers that they "were hurting her, pressing the handcuffs . . . [and] cutting [them] into her wrists," and "injuring her by kneeling on and pressing into her knee and pulling on her neck." (Compl. ¶ 36). However, because plaintiff does not dispute that she was "actively resisting arrest or attempting to evade arrest by flight," Graham, 490 U.S. at 396, officers were justified in using force to a "degree reasonably calculated to prevent

[her] flight." Est. of Armstrong, 810 F.3d at 901; see also Graham, 490 U.S. at 396–97 ("The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation.").

Plaintiff also alleges that she sustained injuries, including "several severe bruises on her left arm and wrists," "several cuts to her wrist," "a black eye," and "mental health [issues] . . . presenting with post-traumatic stress" after the arrest. (Compl. ¶ 37). While the court takes seriously plaintiff's alleged injuries, here, they do not tip the balance of the excessive force analysis. See Hupp, 931 F.3d at 322 (finding the extent of injuries to be "slight" where the plaintiff alleged "emotional trauma, including anxiety and an inability to sleep, as well as . . . middle and lower back pain . . . a contusion[,] and [a] lumbosacral strain").

Thus, plaintiff fails plausibly to allege a Fourth Amendment violation for excessive force.

v.   State Law Claims

The court next addresses plaintiff's state law claims for false imprisonment, trespass to land, battery, assault, and negligent infliction of emotional distress brought against defendant Singh. Defendant Singh argues that the state law claims fail alongside their federal analogues, or alternatively, that public official immunity bars the claims. The court agrees as to all claims except false imprisonment.

"Under North Carolina's public official immunity doctrine . . . a public official is immune from suit unless the challenged action was (1) outside the scope of official authority, (2) done with malice, or (3) corrupt." Knibbs v. Momphard, 30 F.4th 200, 227 (4th Cir. 2022). "Elementally, a malicious act is an act (1) done wantonly, (2) contrary to the actor's duty, and (3) intended to be injurious to another." Id. "North Carolina law presumes that public officials will discharge their

26

duties in good faith and exercise their powers in accord with the spirit and purpose of the law, so evidence of malice must be sufficient by virtue of its reasonableness, not by mere supposition." Id.

"False arrest is a form of false imprisonment." Fowler v. Valencourt, 334 N.C. 345, 348 (1993); see also Williams v. City of Jacksonville Police Dep't, 165 N.C.App. 587, 596 (2004) ("A false arrest, . . . one without proper legal authority, is one means of committing a false imprisonment."). Thus, where plaintiff alleges a Fourth Amendment claim for false arrest, plaintiff also plausibly alleges a false imprisonment claim under North Carolina law.

"[P]ublic officers' immunity . . . is unavailable to officers who violate clearly established rights because an officer acts with malice when he does that which a man of reasonable intelligence would know to be contrary to his duty." Bailey v. Kennedy, 349 F.3d 731, 742 (4th Cir. 2003); see also Johnson v. City of Fayetteville, 91 F.Supp.3d 775, 816 (E.D.N.C. 2015) ("Where a defendant has been denied qualified immunity as to § 1983 . . . false arrest claims, the Fourth Circuit has found denial of public official immunity on North Carolina common law . . . false imprisonment claims to be appropriate."). Thus, because the court has concluded that qualified immunity does not bar plaintiff's § 1983 claim for false arrest, public official immunity does not bar plaintiff's parallel state law claim for false imprisonment.

Plaintiff's remaining claims are barred by public official immunity. In particular, a "claim of trespass requires: (1) possession of the property by plaintiff when the alleged trespass was committed; (2) an unauthorized entry by defendant; and (3) damage to plaintiff." Singleton v. Haywood Elec. Membership Corp., 357 N.C. 623, 627 (2003). "[C]onsent is a defense to a claim of trespass." Food Lion, Inc. v. Cap. Cities/ABC Inc., 194 F.3d 505, 517 (4th Cir. 1999). Public official immunity under North Carolina law is functionally identical to qualified immunity under

federal law.  See Bailey, 349 F.3d at 742; Pritchard v. Mobley, 595 F. Supp. 3d 438, 452 (E.D.N.C. 2022).  Thus, where the court has concluded that qualified immunity bars plaintiff's § 1983 claim for illegal search, public official immunity bars plaintiff's parallel state law claim for the same reasons.

Plaintiff's claims for assault and battery under North Carolina law similarly are "subsumed within the federal excessive force claim and so" track the outcome of the federal claim.  Rowland, 41 F.3d at 174.  Therefore, where the court concluded that plaintiff fails to state a § 1983 claim for excessive force, her state law claims for assault and battery also fail.

"A negligent infliction of emotional distress claim, by its very definition, necessarily alleges only negligence."  Shaw v. Stroud, 13 F.3d 791, 803 (4th Cir. 1994).  North Carolina officials are immune from individual liability for negligent conduct where "a public official does not waive immunity unless it is alleged . . . that the officer's actions were corrupt or malicious or beyond the scope of the official's duties."  Id. at 804.  Thus, where plaintiff alleges that "[t]he actions and behaviors [of] [d]efendant Singh . . . were negligent," (compl. ¶ 95), without allegations of corrupt or malicious conduct, public official immunity bars plaintiff's state law claim for negligent infliction of emotional distress.

b.    Claims Against City Defendants

Plaintiff brings claims under § 1983 for violations of the Fourth Amendment, violation of the North Carolina State Constitution, and state law claims for assault, battery, and false imprisonment against city defendants.  Defendants argue that plaintiff has abandoned her claims under § 1983 and the North Carolina State Constitution, and her remaining state law claims premised on respondeat superior fall with her assault, battery, and false imprisonment claims against defendants Singh and Gerganous in their individual capacities.

28

i.      Monell Claims

Plaintiff asserts § 1983 claims under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978) against city defendants for violation of her constitutional rights.  Plaintiff abandons her Monell claims by not addressing city defendants' arguments in her response brief.  (See generally DE 28).  In addition and in the alternative, plaintiff fails to plausibly allege a Monell violation against city defendants.  Under Monell, a local government entity may be sued under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" to the plaintiff.  436 U.S. at 694.  "A policy or custom for which a municipality may be held liable can arise in four ways: 1) through an express policy, such as a written ordinance or regulation; 2) through the decisions of a person with final policymaking authority; 3) through an omission, such as a failure to properly train officers, that manifests deliberate indifference to the rights of citizens; or 4) through a practice that is so persistent and widespread as to constitute a custom or usage with the force of law."  Lytle v. Doyle, 326 F.3d 463, 471 (4th Cir. 2003).

Plaintiff makes allegations falling under the third and fourth theories of liability.  (See compl. ¶ 46b ("The wrongful acts of [defendants] . . . include . . . [t]he failure of [defendant] City of Raleigh . . . to adequately train the officers of the [RPD] in investigative techniques and procedures.")); (see also id. ¶ 102 ("Defendant City of Raleigh . . . maintained a policy, custom, or pattern and practice of promoting, facilitating, and condoning improper, illegal, and unconstitutional techniques . . . specifically promoting unconstitutional searches and seizures.")).

To state a Monell claim based upon failure to train or custom or usage "[a] plaintiff must point to a persistent and widespread practice of municipal officials, the duration and frequency of which indicate[s] that policymakers 1) had actual or constructive knowledge of the conduct, and

29

2) failed to correct it due to their deliberate indifference." Owens v. Baltimore City State's Att'ys Off., 767 F.3d 379, 402 (4th Cir. 2014). A plaintiff must allege "continued inaction in the face of documented widespread abuses," Grayson v. Peed, 195 F.3d 692, 697 (4th Cir. 1999), for example through allegations of "the existence of reported and unreported cases and numerous successful motions which, if true, would buttress" an assertion of a custom or usage. Owens, 767 F.3d at 403.

Here, plaintiff has not stated a Monell claim based upon failure to train or custom or usage. Plaintiff has not alleged, for example, "continued inaction in the face of documented widespread abuses," Grayson, 195 F.3d at 697, or "the existence of reported and unreported cases and numerous successful motions which, if true, would buttress" an assertion of a custom or usage. Owens, 767 F.3d at 403. Plaintiff has asserted in only conclusory terms a "custom, or pattern and practice of promoting, facilitating, and condoning improper, illegal, and unconstitutional techniques," where she fails to allege other instances or patterns of instances of omissions. (Compl. ¶ 102). While plaintiff argues that "[t]here have been numerous civil rights lawsuits against Raleigh, [RPD], and Raleigh Police officers over [the] past three years," (id. ¶ 105), plaintiff provides no other details of those purported lawsuits or whether they involve the same constitutional issues in this case. Cf. Owens, 767 F.3d at 403 (finding sufficient the allegation that "reported and unreported cases from the period of time before and during the events complained of establish that [a police department] had a custom, policy, or practice of knowingly and repeatedly suppressing exculpatory evidence in criminal prosecutions").

Thus, plaintiff has not alleged a Monell claim pursuant to § 1983 against city defendants.

ii.     North Carolina State Constitution Claims

Plaintiff alleges claims for violation of her rights pursuant to Article I § 19 of the North Carolina State Constitution against city defendants.  In response, defendants argue that plaintiff has abandoned her claims, and, alternatively, plaintiff failed plausibly to allege a North Carolina constitutional claim because of the existence of adequate state remedies.  The court agrees.

Plaintiff again abandons these claims by failing to address city defendants' arguments in her response brief.  (See generally DE 28).  In addition and in the alternative, plaintiff also fails to plausibly allege a claim under the North Carolina State Constitution because of the existence of an "adequate state remedy."  Corum v. Univ. of N. Carolina Through Bd. of Governors, 330 N.C. 761, 782 (1992).  An adequate state law remedy exists where there is a cause of action, at common law or created by statute, that provides plaintiff with "the possibility of relief for the same injury alleged in the direct constitutional claim."  Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ., 363 N.C. 334, 340 (2009).

Here, plaintiff has adequately pleaded a state law claim for false imprisonment against defendant Singh.  Further, although public official immunity bars plaintiff's tort claims for trespass to land, assault, and battery, those claims still provided the opportunity for plaintiff "to enter the courthouse doors and present [her] claim[s]."  Id.  In addition, an available remedy against a defendant in his individual capacity is sufficient to preclude a claim under the North Carolina State Constitution against the defendant in his official capacity.  Therefore, plaintiff's claims under the North Carolina State Constitution are dismissed.

iii.     Respondeat Superior Claim

Plaintiff alleges state law claims for assault, battery, and false imprisonment premised on a theory of respondeat superior against defendant Raleigh.  Defendants assert that, under this

theory, plaintiff's claims against defendant Raleigh must be dismissed where those state law claims cannot be maintained against defendants Singh and Gerganous.

The doctrine of respondeat superior "imputes the negligence of the servant to the master and makes the latter liable for the torts of the former." Pavelka v. Carter, 996 F.2d 645, 651 (4th Cir. 1993). "Moreover, the doctrine is one of vicarious liability, not vicarious immunity, so any immunity the [City of Raleigh] may enjoy does not, absent the operation of some other principle of law, protect" defendant Singh. Id.; see also Simms v. Prudential Life Ins. Co. of America, 140 N.C. App. 529, 535 (2000) ("[D]efendant employer's liability is derivative of its employee's liability, and the primary claim against the employee must first be determined before any claim against defendant employer is possible.").

Where as here, the court has concluded the plaintiff has plausibly alleged a claim for false imprisonment against defendant Singh in his individual capacity, the derivative claim under a theory of respondeat superior can proceed against defendant Raleigh. Similarly, where the court has concluded that plaintiff has not stated a claim for assault or battery against defendant Singh, those derivative claims against defendant Raleigh are dismissed. See Pritchard, 595 F. Supp. 3d at 453 ("The City's liability under respondeat superior for Officer Mobley's actions depends on an underlying tort claim against him.").

c.      Punitive Damages

Defendant Singh argues that plaintiff's request for punitive damages must fail because of the deficiencies in her underlying claims. "[D]amages are available in § 1983 actions for conduct that involves reckless or callous indifference to the federally protected rights of others as well as for conduct motivated by evil intent." Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987). Under North Carolina law, "[p]unitive damages may be awarded only if the claimant proves that the

32

defendant is liable for compensatory damage." N.C. Gen. Stat. § 1D-15(a); <u>Watson v. Dixon</u>, 352 N.C. 343, 348 (2000) ("If the complainant fails to plead or prove his cause of action, then he is not allowed an award of punitive damages because he must establish his cause of action as a prerequisite for a punitive damage award."). Here, plaintiff's false arrest claim under § 1983 and false imprisonment claim under state law will proceed, providing the necessary underlying claim. Accordingly, defendant Singh's motion to dismiss plaintiff's request for punitive damages is denied as to him.

City defendants assert that plaintiff has abandoned her request for punitive damages as it relates to her claims against city defendants, and, in the alternative, that punitive damages are unavailable against municipalities, including municipal employees sued in the official capacities, under § 1983. Where plaintiff fails to state a claim under § 1983 and the North Carolina State Constitution against city defendants, plaintiff's request for punitive damages with respect to those claims is denied. As for plaintiff's surviving respondeat superior claim, "in the absence of statutory provisions to the contrary, municipal corporations are immune from punitive damages." <u>Long v. City of Charlotte</u>, 306 N.C. 187, 208 (1982); <u>see also</u> <u>City of Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981) ("[A] municipality is immune from punitive damages under 42 U.S.C. § 1983."). Here, plaintiff cannot maintain her request for punitive damages pursuant to a respondeat superior claim. <u>See</u> N.C. Gen. Stat. § 1D-15(c) ("Punitive damages shall not be awarded against a person solely on the basis of vicarious liability for the acts or omissions of another."). Thus, plaintiff's request for punitive damages against city defendants is dismissed.

**CONCLUSION**

Based on the foregoing, defendants' motions to dismiss (DE 17, DE 20) are GRANTED IN PART and DENIED IN PART, as follows:

a.  The clerk is DIRECTED to terminate defendant Gerganous as a party in this case where all claims against him are dismissed;

b.  Plaintiff's claims against defendant Singh in his individual capacity under 42 U.S.C. § 1983 for false arrest in violation of the Fourth Amendment, and under North Carolina common law for false imprisonment may proceed;

c.  Plaintiff may pursue recovery from defendant Raleigh for her claim under a theory of respondeat superior predicated upon false imprisonment; and

d.  Plaintiff may pursue punitive damages against defendant Singh on these surviving claims; and

e.  All other claims are dismissed.

Also as set forth above, motion to seal (DE 25) is DISMISSED AS MOOT. The clerk is DIRECTED to maintain docket entries 21-1 and 23-1 under seal.

Stay imposed August 2, 2023, now is LIFTED and the clerk is DIRECTED to issue the court's initial order on planning and scheduling.

SO ORDERED, this the 27th day of March, 2024.

LOUISE W. FLANAGAN
United States District Judge

34